1  Katherine T. Corrigan, SBN 132226
2  CORRIGAN WELBOURN & STOKKE,
   A PROFESSIONAL LAW CORPORATION
3  4100 Newport Place, Suite 550
4  Newport Beach, CA 92660
   Telephone: 949-251-0330
5  Facsimile: 949-251-1181
6  E-Mail:   kate@cwsdefense.com
   Attorney for Defendant, LI LIN HSU
7
                   UNITED STATES DISTRICT COURT
8
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
9
                          SOUTHERN DIVISION
10
   UNITED STATES OF AMERICA,         )
11                                    )   Case: SA CR 18-000217-AG
              Plaintiff,              )
12                                    )
        vs.                           )   DEFENDANT'S POSITION RE:
13                                    )   SENTENCING; EXHIBITS A AND B
   LI LIN HSU,                        )
14                                    )
   Aka, Yilin Hsu                     )   Sentencing Date: January 27, 2020
15                                    )   Hearing Time: 11:00 a.m.
              Defendant               )
16                                    )
17
18  **TO THE HONORABLE ANDREW J. GUILFORD, UNITED STATES**
    **DISTRICT JUDGE, THE UNITED STATES ATTORNEY'S OFFICE AND**
19  **ITS ATTORNEYS OF RECORD, ASSISTANT UNITED STATES**
20  **ATTORNEYS POONAM KUMAR AND ALEXANDER WYMAN AND**
    **UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICER**
21  **ELIZABETH MORONY:**
22       Defendant LI LIN HSU (hereinafter the "***Defendant***"), by and through counsel
23  of record, Katherine Corrigan, hereby files Defendant's Position Re Sentencing in the
24  above-entitled matter.
25
26  DATED: January 13, 2020              ___/s/_____
27                                        Katherine Corrigan
                                          Attorney for Defendant
28
    1

# I.

## INTRODUCTION

The sentence recommended by probation and the government is greater than necessary to achieve the statutory purposes of punishment. The advisory sentencing guideline range produced by the application of the adjustments and enhancements is overly punitive and does not advance the statutory purposes of sentencing.

Defendant respectfully submits this memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. Section 3553(a) in light of *United States v. Booker*, 125 U.S. 738 (2005).

After full analysis of the sentencing factors in this case, the information provided by the defense and probation, the Defendant requests that the Court impose the following sentence:

1. No more than 70 months imprisonment
2. 3 years supervised release
3. Imposition of no fine
4. Imposition of $100 special assessment
5. An order of restitution
6. The waiver of interest on the restitution ordered (due to inability to pay interest)
7. The conditions of supervised release articulated in the sentence recommendation letter disclosed by probation and which is found at Docket entry 76.

The requested sentence is based on the factors cited in this memorandum and articulated in the probation officer's sentence recommendation letter. The proposed sentence is significant and meets the goals of punishment – it is no greater than necessary. The Defendant believes that such a sentence is reasonable in light of the facts of this case, the Defendant's personal history and characteristics, and her lack of

2

Defendant's Sentencing Position Memorandum

1   criminal history.  In addition, it takes into account that Defendant's efforts to

2   rehabilitate herself while in custody through the participation in study, courses and

3   educational programs.  The proposed sentence meets the goals of modern sentencing

4   law, as set forth in Title 18 U.S.C. §3553(a) and related case law.

5                                                        I.

6            **PROCEDURAL BACKGROUND AND DEFENDANT'S COMMENTS**

7            A. *Federal Court Proceedings.*

8            The Defendant was arrested, and on April 18, 2018, the Defendant appeared in

9   Court and was released on bond.  Unfortunately, about a month later, after the

10  Defendant did not use her time on bond in a manner that was lawful, and she was re-

11  arrested and detained on May 25, 2018.  She has been in custody now for more than 1

12  ½ years.  (See PSR ¶¶14-15.)

13          On January 6, 2019, the Defendant executed a Plea Agreement.  Her prior

14  counsel and the government signed the agreement on January 10, 2019.  The Court

15  accepted her guilty plea on February 4, 2019.

16          The Defendant is now prepared to be sentenced.

17          B. *The Plea Agreement:*

18               a. *Guilty Plea to Count 6 of the First Superseding Indictment (18*

19                  *U.S.C. § 1343 – wire fraud)*

20          In this Case, the Defendant, with the assistance of her prior counsel, entered into

21  a plea agreement with the government in this Case (the ***"Plea Agreement"***).  The

22  executed Plea Agreement is filed with the Court. The terms and conditions of the Plea

23  Agreement are accurately reflected in the PSR.  (See PSR ¶¶2-9).  Instead of entering

24  into a plea agreement that specified an agreement on the applicable U.S.S.G. sections,

25  several issues were left open for argument.

26          The Plea Agreement alerts the Court that the parties agreed to the following

27  applicable sentencing guideline factors:

28                  Base offense level                        7 [U.S.S.G. §2B1.1 (a) (1)]

3

| Violation of a Prior Administrative Order | +2 [U.S.S.G. §2B1.1 (b) (9)(C)] |
| Obstruction of Justice | +2 [U.S.S.G. §3C1.1] |

The PSR correctly indicates that the Government reserved the right to argue that the following enhancements should apply:

| Loss (for losses of more than $3.5 million) | +18[U.S.S.G. §2B1.1 (b) (1) (J)] |
| 10 or more victims | +2 [U.S.S.G. §2B1.1 (b) (2) (A)] |
| Sophisticated Means | +2 [U.S.S.G. §2B1.1 (b) (10) (c)] |
| Abuse of Position of Trust | +2 [U.S.S.G. §3B1.3] |
| Commission of an Offense while on Pretrial Release | +3 [U.S.S.G. §3C1.3] |

The government also has agreed to recommend to the Court that the Defendant be afforded the relief under U.S.S.G. §3E1.1 provided that the Defendant meets the criteria.

The parties reserved the right to argue that additional specific offense characteristics, adjustments or departures under the U.S.S.G. are appropriate, and reserve the right to argue for a sentence outside the sentencing range established by the U.S.S.G. based on the factors set forth in 18 U.S.C. §3553 (a) (1), (a) (2), (a) (3), (a) (6), and (a) (7).

## C. _Minimum and Maximum Possible Sentence_

The statutory maximum sentence that the Court can impose in this case is 20-year period of imprisonment, a 3-year period of supervised release, a fine of $250,000.00 or twice the gross gain or gross loss associated with the offense, whichever is greatest; and a mandatory special assessment of $100.00. There is no statutory mandatory minimum sentence in this Case. In addition, the Defendant must pay full restitution to the victims of the offense. In this regard, the Plea Agreement states: the "parties currently believe that the applicable amount of restitution is approximately $6,016,203.00, but recognize

4

Defendant's Sentencing Position Memorandum

1  and agree that this amount could change based on facts that come to the attention of
2  the parties prior to sentencing."
3       **D.  *Defendant's Comments Regarding the PSR:***
4       **1.  Description of the Offense Conduct and Plea Agreement.**
5       The PSR accurately describes the offense conduct and the Plea Agreement.
6       **2.  Restitution:**
7       The PSR calculates the restitution to be $4,817,914.05 (far less than the amount
8  that the parties cited in the Plea Agreement.) See PSR ¶¶ 59-62.    (Note:  The
9  government's sentencing position indicates that the restitution order should be in the
10  amount of $5,300,914.75, noting that the difference is based on the fact that the Irvine
11  residence has now been sold and the sales price was $1,247,000.00, an amount lower
12  than the fair market value the probation officer used.)
13       **3.  Offense Level Calculation:**
14       The PSR contains analysis of sentencing guideline provisions that the probation
15  officer believes apply.  They are as follows:

| | |
|---|---|
| Base offense level | 7 [U.S.S.G. §2B1.1 (a) (1)] |
| Loss (more than $3.5 million) | +18 [U.S.S.G. §2B1.1 (b) (1) (J)] |
| 10 or more victims | +2 [U.S.S.G. §2B1.1 (b) (2) (A)] |
| Violation of a Prior Administrative Order (FINRA order) | +2 [U.S.S.G. §2B1.1 (b) (9)(C)] |
| Sophisticated Means | +2 [U.S.S.G. §2B1.1 (b) (10) (c)] |
| Abuse of Position of Trust | +2 [U.S.S.G. §3B1.3] |
| Obstruction of Justice | +2 [U.S.S.G. §3C1.1] |
| Acceptance of Responsibility | -3 [U.S.S.G> §3E1.1] |
| Total Adjusted Offense Level - | 32 |
| Criminal History Category | I (0 points) |

5

1    Advisory Sentencing Range:  121-151 months imprisonment

2    The PSR does not include a recommendation that the adjustment for

3    Commission of an Offense while on Pretrial Release (+3 [U.S.S.G. §3C1.3]) be used in

4    the calculation of the sentencing guidelines in this Case. (See PSR ¶¶69-89.)

5    **4.  Criminal History Calculation:**

6    The Defendant has no criminal history.  The Defendant concurs with probation's

7    calculation. (See PSR ¶¶91-98.)

8    **5.  Acceptance of Responsibility:**

9    The PSR indicates that the Defendant has accepted responsibility. (See PSR ¶¶87-

10   88.)

11   **6.  Restitution:**

12   As required by the Plea Agreement, the Defendant has completed financial

13   worksheets and made efforts to facilitate the property forfeiture process.  She has also

14   identified and plans to agree to forfeit the funds contained in an account she opened in

15   her mother's name, the real property, the vehicle and other sources of restitution.

16   **7.  Recommendation of the Payment of No Fine and Waiver of the**

17   **Payment of Interest on the Restitution Order; Defendant Concurs:**

18   The probation officer has determined that the Defendant has no financial ability

19   to pay a fine or to pay interest on the restitution amount.  Defendant concurs with this

20   finding.   (See PSR ¶¶ 123-132.)

21   **8.  Defendant's Personal Characteristics and History:**

22   **a.  General background.**

23   The PSR accurately reflects Defendant's childhood, family background, and

24   upbringing.  The Defendant's life has been filled with odd relationships, including her

25   relationship with her parents, step siblings and a boyfriend.  Not one of the relationships

26   seems healthy or the source of solid example.

27   The Defendant grew up without having the benefit of a relationship with her

28   father.  She does not know anything about him.  Her mother married a man with other

6

children.  The Defendant did not develop any relationship with them.  She was sent to live with and to be raised by her maternal grandparents.  They lived in Taiwan in the countryside.  During her early childhood, her mother lived in Japan. Her mother would visit her once a year.  As a result, she was not close to her mother.  Annual visits are clearly do not permit a mother daughter relationship to develop.  Her grandparents raised her with no rules.  They spoiled her.  She developed a parent child relationship with them.

When the Defendant was 12, her mother remarried.   Her mother and step father lived in Tokyo.  They moved her to Tokyo.  The Defendant did not know her stepfather, had little relationship with her mother, did not speak Japanese, and was now living in a foreign country.

Her mother was exacting and imposed a strict diet on her.  Her looks and appearance were emphasized.  She has been overweight prior to that time.  As time marched on, Defendant learned to speak Japanese and did well in school.

During high school, the Defendant's mother suggested that she move to the United States and take advantage of her bilingual skills.  At the age of 18, the Defendant moved to California and commuted from Covina to Malibu where she attended Pepperdine University.  Her mother did not move with her, but she had some relatives in the United States.  She pursued her education and became a naturalized citizen.

The Defendant has never been married and has no children.  As the PSR notes, she was involved in a relationship with a man who lied to her.  He told her he was single.  They moved in together but he did not contribute to the household expenses.  The two of them were involved in a traffic collision and it was then that Defendant received a knock on the door by a woman.  This woman was her "single" boyfriend's wife.  The boyfriend and wife tried to get money from the Defendant.  Defendant, on the advice of counsel, ended up paying a fraction of the demand so that she could get them out of her life.

**b.  Health Issues:**

7

1    The Defendant was born premature and spent the first 4 months of her life in an
2  incubator.  She suffered from weak lungs.  As a result of a traffic collision, she suffered
3  2 herniated discs.  Otherwise, she reports that she is now generally healthy.  (See PSR
4  ¶¶111-113.)

5    **c. Mental Health:**
6    While in custody, the Defendant sought and obtained therapy.  She also
7  completed a nonresidential RDAP program.  She reports that she has been diagnosed
8  with depression.  (See PSR ¶114.)

9    **d. No History of Substance Abuse:**
10   The Defendant has no history of substance abuse. (See PSR ¶115.)

11   **e. Education and Special Skills:**
12   The Defendant is well educated and is multilingual.  (See PSR ¶¶116-120.)

13   **f. Employment:**
14   The Defendant's is reflected in the PSR.  (See PSR ¶¶121-122.)

15

16   **III.**

17   **POST-BOOKER SENTENCING CONSIDERATIONS**

18   **18 U.S.C. Sections 3553(a) (1)-(7)**

19   As the Court well knows, in light of *United States v. Booker*, 125 U.S. 738 (2005),
20  the sentencing guidelines are advisory and are but one factor to be considered by the
21  Court in fashioning an appropriate reasonable sentence that is "sufficient but not greater
22  than necessary" to achieve the statutory purposes of punishment, as required by 18
23  U.S.C. Section 3553(a).  The Sentencing Guidelines are only a starting point for the
24  Court in crafting a reasonable sentence.

25   Under the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a), the district courts
26  are required to sentence below the range if such a sentence would be sufficient to
27  achieve the purposes of sentencing.  The sentencing guideline range is not binding on
28  the Court, as the Sentencing Guidelines are merely advisory and only one of several

8

1  factors to be considered in determining sentence.  *Booker*, 124 S.Ct. at 764-65.  Although
2  the Court considers the Guidelines first, the Guidelines are only the starting point in
3  crafting a reasonable sentence.  *Gall v. United* States, 552 U.S. 38, 49 (2007), *United States*
4  *v.* Carty, 520 F.3d 984, 991 (9th Cir. 2008); *United States v.* Cantrell, 433 F. 3d 1269, 1280
5  (9th Cir. 2006.)  There is no presumption that a Guideline sentence should apply.  *Nelson*
6  *v. United* States, 551 U.S. 338, 351 (2007); *Carty,* 520 F.3d at 994.

7         In arriving at a reasonable sentence, the Sentencing Reform Act of 1984, *18*
8  U.S.C. Section 3553(a), provides the Court with the factors to include in fashioning a
9  sentence that is sufficient but not greater than necessary:

10    1.  the nature and circumstances of the offense and the history and characteristics of
11        the defendant;
12    2.  the need for the sentence imposed –
13        (A) to reflect the seriousness of the offense, to promote respect for the law, and
14        to provide just punishment for the offense;
15        (B) to afford adequate deterrence to criminal conduct;
16        (C) to protect the public from further crimes of the defendant; and
17        (D) to provide the defendant with needed educational or vocational training,
18        medical care, or other correctional treatment in the most effective manner;
19    3.  the kinds of sentences available;
20    4.  the kinds of sentence and the sentencing range established for--
21        (A) the applicable category of offense committed by the applicable category
22        of defendant as set forth in the guidelines issued by the Sentencing Commission
23        pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on
24        the date the defendant is sentenced (***the Sentencing Guideline Range***);
25    5.  any pertinent policy statement issued by the Sentencing Commission pursuant to
26        28 U.S.C. Section 994(a)(2) that is in effect on the date that defendant is
27        sentenced;
28

9

Defendant's Sentencing Position Memorandum

6.  the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct; and

7.  the need to provide restitution to victim(s) of the offense.

*Id.,* 18 U.S.C. Sections 3553(a) (1)-(7).

## IV.

## DEFENDANT'S POSITION RE: SENTENCING FACTORS AS APPLIED TO DEFENDANT

### 1. The proposed sentence considers the personal history and characteristic of the Defendant and the nature of the offense.

As the Supreme Court observed in *Gall v. United States,* 552 U.S. 38, 52 (2007) (internal quote marks deleted), "the sentencing judge consider[s] every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." The Defendant's personal history and characteristics are clearly outlined in the PSR and are summarized in the preceding pages. The Defendant's background and upbringing do not provide an excuse for the Defendant's conduct but do provide a glimpse into how she could have allowed herself to not be well guided in her life decisions.

The Defendant holds herself accountable and takes responsibility for her wrongdoing. She is remorseful and ashamed of her offense conduct and has difficulty reconciling how she allowed herself to take advantage of her victims. Her course work and participation in programs while in custody have enabled her to attempt to gain insight into how she, a woman with an education and good job, allowed herself to engage in the offense conduct. She hopes to be able to find a way to earn money in the future to assist with the restitution order.

### 2. The proposed sentence reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense.

10

Defendant's Sentencing Position Memorandum

1    A sentence of no more than 70 months reflects the seriousness of the offense. It

2  is a significant sentence and will serve to promote respect for the law and provide just

3  punishment. It will send the message that a person who engages in similar conduct will

4  face significant incarceration and supervised release conditions with substantial

5  limitations on liberty. The Defendant's has no criminal history or issues with substance

6  abuse or gambling. Her anticipated terms and conditions of supervised release will

7  ensure that her liberty will be limited, and decision making will be monitored. She

8  cannot risk any further law violations.

9    **3.   The proposed sentence affords adequate specific and general**

10   **deterrence to criminal conduct.**

11   The proposed sentence affords both specific and general deterrence to criminal

12  conduct. The Defendant will make the Court aware of her recognition of the

13  seriousness of her offense conduct. She has never served a sentence of incarceration

14  prior to this case. A 70-month sentence is significant and substantial. General

15  deterrence goals are satisfied by the proposed sentence. The message that a significant

16  sentence sends to the public is clear -- you will serve a substantial time in locked up in

17  prison if you engage in similar criminal conduct.

18   **4.   The proposed sentence protects the public from further crimes of the**

19   **Defendant.**

20   The Defendant knows her conduct has put her in peril of a substantial period of

21  incarceration. The Defendant failed the public and her victims on several levels. She

22  failed in her performance on pretrial release. Her choice to lie to the SEC, and to

23  violate the orders by FINRA have culminated in an ugly tale of fraud. She has now

24  begun the process of reckoning with the damage she has caused. Her time in custody

25  has afforded her time to concentrate on her behavior and to seek counseling and

26  education that are assisting her with forming a sense of self-awareness and determining

27  why she engaged in this level of greed and deceit. As the letters that are attached to this

28  sentencing position (Exhibit A) and the certificates that demonstrate her course work

11

Defendant's Sentencing Position Memorandum

1  (religious, rehabilitation and educational) (Exhibit B), the Defendant is well educated, a
2  woman who is a churchgoer, and  who is well thought of by those who know her.  Her
3  offense conduct is contrary to the characteristics of the person her friends know.  She is
4  working to re-magnetize her moral center and to be a person who can live and work in
5  our society.  The Defendant blames no one but herself.  She acknowledges her
6  wrongdoing, and is ashamed of actions.

7       **5.  <u>The Minimally-Sufficient Sentence in the Case</u>**

8       As discussed above, ***Booker*** and Title 18 of the United States Code Section
9  3553(a)'s parsimony provision impose a statutory cap on sentences, despite what is
10  recommended or prescribed by the sentencing Guidelines:  the sentence must be
11  "sufficient, but not greater than necessary" to achieve the purposes of punishment.
12  Section 3553(a) (2) provides that the Court shall impose a sentence ***sufficient but not***
13  ***greater than necessary*** to comply with Section 3553(a).

14       A sentence of no more than 70 months in prison, followed by a 3-year period of
15  supervised release adequately addresses the factors this Court must consider in
16  fashioning a sentence in this Case.  Justice is served by this proposed sentence.  The
17  proposed sentence achieves the goals of deterrence, incapacitation, and protection of
18  the public.

19  **V.**

20  <u>**CONCLUSION**</u>

21       In light of the foregoing and the records before the Court, the Defendant
22  requests that the Court impose the following sentence:

23         1.  No more than 70 months imprisonment
24         2.  3 years supervised release
25         3.  Imposition of no fine
26         4.  Imposition of $100 special assessment
27         5.  An order of restitution
28

12

6. The waiver of interest on the restitution ordered (due to inability to pay interest)

7. The conditions of supervised release articulated in the sentence recommendation letter disclosed by probation and which is found at Docket entry 76.

DATED:  January 13, 2020

Respectfully submitted,

_____/s/_____

Katherine Corrigan
Attorney for Defendant

13

Defendant's Sentencing Position Memorandum

1

**CERTIFICATE OF SERVICE**

2

I, Katherine Corrigan, declare:

3

     That I am a citizen of the United States and resident or employed in Orange

4

5

County, California; that my business address is Corrigan Welbourn & Stokke, APLC,

6

4100 Newport Place, Suite 550, Newport Beach, California 92660; that I am over the

7

age of eighteen years, and am not a party to the above-entitled action;

8

9

     That on *January 13, 2020*, I caused to be served via United States Mail OR E-

10

MAIL a copy of the following document:

11

DEFENDANT'S POSITION RE: SENTENCING; EXHIBITS A AND B

12

on the following persons:

13

14

AUSA Poonam Kumar, via email:  Poonam.Kumar@usdoj.gov

15

AUSA Alex Wyman, via email:  Alex.Wyman@usdoj.gov

16

17

USPO Eunice Habig, via email:  eunice_habig@cacp.uscourts.gov

18

     This Certificate is executed on *January 13, 2020* at Newport Beach, California.  I

19

certify under penalty of perjury that the foregoing is true and correct.

20

21

**Dated: January 13, 2020**        ____/s/_____

22

Katherine Corrigan

23

24

25

26

27

28

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23           EXHIBIT A
24
25
26
27
28

15

Defendant's Sentencing Position Memorandum

Charlene Lee

Janurary 3, 2020

RE: CASE OF YI LIN LEE

Dear Honorable Judge,

My name is Charlene Lee, 30 years old, and I am Yi Lin Lee's younger cousin. I grew up in a step family and consider myself a distant relative to Yi Lin as I was not able to develop a relationship with her until after my college years, but my younger memories of her were always positive. Because of our age gap, my only real memories of her was that she was always studying (She was in college during my Elementary years) but I was always fond of her because she was the only older cousin that never picked on me.

Although Yi Lin and I are 12 years apart, we became closer after I started my job in 2013 due to my relationship with her mother. I get along very well with her mother, Thun Hui Lee, and often visit her overseas. This eventually brought me closer to Yi Lin as we would see each other more often at family gatherings. As time passed by, we would do things like what sisters would do; have lunch, go to target together, and even take trips together with her mother.

I was extremely shocked and depressed to find out about this case and the severity of it. Yi Lin has always been generous and kind to me, and often talked to me about God, which made it even more difficult to believe that this is happening. She is the only child of my aunt, and this case has taken a big toll on my aunt's health as well as my own.

She is a faithful Christian, and I believe that something went really wrong during these past years. Even when we would have lunch dates, she would always buy extra food for her church members during her worship meetings. I can't find myself to believe that someone who was so close to God, made the mistakes that she did, but I know and believe that if she did, she regrets and will repent deeply for her sins.

**I beg for your leniency in this case**, not just for Yi Lin but for everyone that will be deeply affected by this case. Without Yi Lin, I do not know what will happen to her mother. It breaks my heart to think of my aunt's lonely future.

I recently just married and am trying to start a family of my own, so I apologize and feel so guilty that I could not have done more for her during this time. I believe if she was able to reach out to her church, they would all also have nothing but positive things to say about Yi Lin.

I Sincerely ask the court to take this letter into consideration during Yi Lin's sentencing. Your honor, I deeply thank you for your time and consideration for my request of leniency on this case.

Sincerely,
Charlene Lee

Dear Respected and Honorable Judge,

My name is Thun Hui Lee, I was born in the year of 1955 and am 64 years old. I am Yi Lin's mother and currently reside in Japan.

Yi Lin was born on August 12, 1977 in Taipei, Taiwan. During my pregnancy, due to my poor health, I gave birth to Yi Lin 3 months prematurely. She was only 2.84 pounds (1300 grams) and was placed in an incubator during her first few months of life. Even the doctor was not confident she would make it. The doctor advised me that even if she did survive, due to her size, she would not be able to enjoy a healthy life. Although it was nearly impossible, like a miracle, she survived. Watching her grow up gave me so much hope.

Being premature, Yi Lin had many handicaps and faced many obstacles growing up. She always had to try twice as hard and was slower and less coordinated than the other kids. She was a good kid, never got into any trouble and always studied very hard, but everything seemed much more difficult than normal for her.

Her social skills were also weak. She was introverted, reserved and never opened up to others which made it difficult for her to make friends. But, since she was not causing any trouble, I was guilty for looking overlooking this matter since I too, was too busy trying to survive as a young, single mother.

Yi Lin's father and I were separated before her birth, so she grew up without a real father figure. Because of this, my mother in Taiwan helped me look after her while I worked in Japan. She lived in Japan with me from age 12 – 17 and graduated high school there. Then shortly after, she approached me and told me that her dream was to move to America to learn English. Since I felt like I never did anything for her as a mother, I agreed and worked twice as hard to send her to America as an international student.

Once she got to America, she enrolled in school and seemed to be adjusting well and quickly to her environment. My sister who lived in America told me she was studying very hard every day and attended church every week.

When I heard the news that my daughter had committed crime in America, I couldn't help but think that maybe temptation or misinformation led her down the wrong path. I wonder if she met some bad people along the way and was coerced into committing these crimes that she has been accused of. Till this very moment, I am still shocked and cannot believe this is happening.

In November 2009, I had a stroke, so as a mother I was unable and incapable of taking care of her. I couldn't check up on her as often and I feel that that was the turning point where it all started to go wrong.

In 1999 her father passed away from the big JiJi earthquake that shook and killed many people in Taiwan. Although she grew up without her father, I can't help but wonder if this news also took a toll in her life and left her with a lonely heart...

She has always been very attached to her emotions but has always worked very hard and had a very positive heart. I can't help to wonder if not being able to feel a father's love also played a role in what has happened today.

**I am not trying to make excuses for my daughter, but I can't believe what she has done, and am hoping that your Honor would consider all the facts and show leniency on her sentencing. I beg for you to give her a second chance so she can repay for her crimes and return to society and become the good person I know she is capable of being. I solely believe that she would never commit any crime or ever have a second encounter with the law again. I will make it my responsibility to ensure that she will never do anything to shame her family or herself like this again.**

I am so sorry I did not do my job properly as a mother and I regret to say that we are here today because I was unable to be a decent mother in the past. I promise that if you would show leniency on her sentencing, I will be a good mother from now on and guide and watch her make only the right choices. Please consider the circumstances and understand that her choices might have been made in a sudden lapse of judgment in order for her to protect and save her lacking mother. Her poor choices may have been made because she lacked the guidance and love that normal children receive from their parents while growing up. I promise to start over fresh and teach her to become only a good person.

Your Honor, Thank you for your time and consideration.

May 5, 2019

Sincerely,

**Thun Hui** Lee

# Certificate of Translator

I, *Charlene Lee*, hereby certify that all English language translations submitted with the copy issued in Chinese are complete and accurate. I assure that I am competent to translate from the Chinese language into English.

Translator's information

| | |
|---|---|
| Name: | Charlene Lee |
| Address: | ~~Valley Park CA 91744~~ |
| Cell Phone: | |
| Email: | ~~charlee20@~~Gmail.com |

Translated

- Letter to your Honor

Date : Janurary 8, 2020

Charlene Lee
_____

*Charlene Lee*, Translator

Yawen Li

May 6, 2019

RE: Ms. Yilin Hsu, Financial Fraud case

Your Honor,

I am writing this letter to refer Ms. Yilin Hsu in regards to her character, whom I know as a friend for a period of 5 years. We went to the same church together – prayer meeting every Tuesday and home meeting every Friday.

At the beginning of my Christian life, she cared for me as a big sister. She took me out for shopping and invited me for meals a few times. We also read bible together. I could tell that she had a heart for others and she was generous of giving.

I was aware that she disappeared for one or two years approximately in 2015 but I did not know the reason. I thought she went back to her home country to visit her family. I was shocked to know that she is being tried for in the court.

She is in our prayer. Please let me know if I can be of further help.

Yours sincerely.

Yawen Li Mak
Respiratory therapist student

Max Shen

January 11st. 2020

To Honourable Judge

I am writing this letter to refer Yinlin Lee in regards to her character.

My wife and myself have known Yinlin Lee as friend since 2012, we were both troubled and surprised to hear about her case as she has always been a honest and pure person. It is for the reason I am happy to write a letter of reference for Yinlin Lee regarding this matter. I understand the seriousness of this matter however, hope the court will show some leniency.

Yinlin Lee has always been upright and generous character in our friendship. I own a video store in Rowland Heights and when I struggled in the business. She gave us an advice to improve the business. It was Yinlin Lee that was a source of camaraderie for both me and my wife. She has been a good friend over years.

In additional to our friendship, she is usually upstanding person in the neighbourhood. While it is unfortunate that she made some bad decisions, thus resulting in this case. While I was surprised to hear of the misconduct, it comes as no surprise that she is ready to accept responsibility for this action. I believe that as we move forward, she will emerge a better person. In short, Yinlin Lee expressed deep sense of remorse in making such a serious mistake and I believe in her ability to pay her debt to society.

It is my sincere hope the court takes this letter into consideration at the time of sentencing. Despite the current case, I still believe Yinlin Lee to be an honourable individual, a valuable member of our community, and a good human being.

Sincerely,

Max Shen   1.11.2020

Carol Cheng

Andre J. Guilford
Address

May 13, 2019

RE: Sentencing of Yi Lin Lee

To: The Honorable Judge Andre J. Guilford

My name is Carol Cheng and I am Yi Lin Lee's cousin. I was both troubled and surprised to learn about this case. Yi Lin is someone I grew up with and she has always been a good person. I am writing to you in hopes that you would consider giving her leniency in her sentencing.

I understand the seriousness of her crime and was shocked to learn of what she did. I feel that Yilin lead a double life and that side of her was never transparent until now. Growing up, Yilin was always someone I looked up to. She studied hard in school, worked hard at her job, and had a strong belief in Christianity. She is the oldest out of all our cousins, so it was natural that she took on the nurturing and protective role. As we grew into adulthood, our interaction and time was limited due to work and family. The times that I did spend with her was always positive. I have two daughters, first nieces to her in the family and she always manage to take time out of her busy schedule to build a good relationship with them. I know Yi Lin has had time to really reflect on what she did and in return gained a deep sense of remorse for making such a serious mistake, a mistake she will not make again.

It is my sincere hope that the court takes this letter into consideration at the time of sentencing. Thank you, Judge Andre J. Guilford for considering this request for leniency.

Respectfully,

Carol Cheng

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

16



EXHIBIT B

Defendant's Sentencing Position Memorandum



School for Evangelism and Discipleship
A Division of Global University~ICI

This is to certify that

Yilin Lee

has satisfactorily completed the course

Personal Evangelism

On this  19th  day of  November , 2019

DIRECTOR



School for Evangelism and Discipleship
A Division of Global University—ICI

This is to certify that

Yilin Lee

has satisfactorily completed the course

The Church

On this _18th_ day of _October_ , _2019_

Chaplain J. Anderson
DIRECTOR

# COMPLETION CERTIFICATE

*The Correspondence School of Emmaus International certifies that*

## YILIN LEE

*has successfully completed the course*

## Good News for All



EMMAUS
INTERNATIONAL

**Date:** 11/04/19
**Grade:** 88%
**Units:** 1

Terry Wilson
Executive Director

COMPLETION CERTIFICATE

The Correspondence School of Emmaus International certifies that

YILIN LEE

has successfully completed the course

I'll Take the High Road



EMMAUS
INTERNATIONAL



Terry Wilson
Executive Director

Date: 11/04/19
Grade: 89%
Units: 2

THE CORRESPONDENCE SCHOOL OF EMMAUS INTERNATIONAL
ESTABLISHED 1942

# CERTIFICATE OF COMPLETION

*This certificate is presented to*

## YILIN LEE

*for successfully completing*

## FREEDOM PACK

*as part of The Emmaus Road course of study.*



EMMAUS
INTERNATIONAL

Jon Loveless, ThM
Biblical Studies Director

Terry Wilson
Executive Director
07/15/9



School for Evangelism and Discipleship
A Division of Global University–ICI

This is to certify that

Yilin Lee

has satisfactorily completed the course

The Great Questions of Life

On this ___11th___ day of ___June___, 2019

DIRECTOR



School for Evangelism and Discipleship
A Division of Global University—ICI

This is to certify that

Yilin Lee

has satisfactorily completed the course

Your New Life

On this ___9th___ day of ___July___, 2019

DIRECTOR



School for Evangelism and Discipleship
A Division of Global University—ICI

*This is to certify that*

**Yilin Lee**

has satisfactorily completed the course

**Your Bible**

On this ___13th___ day of ___August___, 2019

DIRECTOR



School for Evangelism and Discipleship
A Division of Global University–ICI

This is to certify that

Yilin Lee

has satisfactorily completed the course

Who Jesus Is

On this  13th  day of  September , 2019

DIRECTOR

# COMPLETION CERTIFICATE

*The Correspondence School of Emmaus International certifies that*

## YILIN LEE

*has successfully completed the course*

## A Journey Through the Bible

**Date:** 09/10/19
**Grade:** 96%
**Units:** 1


EMMAUS
INTERNATIONAL

Terry Wilson
Executive Director

# COMPLETION CERTIFICATE

*The Correspondence School of Emmaus International certifies that*

## YILIN LEE

*has successfully completed the course*

## The Bible—What's In It For You?

**Date:** 07/22/19
**Grade:** 97%
**Units:** 1

EMMAUS
INTERNATIONAL

Terry Wilson
Executive Director

# COMPLETION CERTIFICATE

*The Correspondence School of Emmaus International certifies that*

## YILIN LEE

*has successfully completed the course*

## The Greatest Man Alive

**Date:** 05/15/19
**Grade:** 100%
**Units:** 1



Terry Wilson
**Executive Director**

# COMPLETION CERTIFICATE

*The Correspondence School of Emmaus International certifies that*

## YILIN LEE

*has successfully completed the course*

## Doing Time With Jesus

**Date:** 06/13/19
**Grade:** 98%
**Units:** 1

Terry Wilson
**Executive Director**

# COMPLETION CERTIFICATE

*The Correspondence School of Emmaus International certifies that*

## YILIN LEE

*has successfully completed the course*

## Walkin the Walk

**Date:** 06/13/19
**Grade:** 92%
**Units:** 1



*Terry Wilson*
**Terry Wilson**
**Executive Director**

# COMPLETION CERTIFICATE

*The Correspondence School of Emmaus International certifies that*

## YILIN LEE

*has successfully completed the course*

## Men Who Met the Master

**Date:** 05/15/19
**Grade:** 95%
**Units:** 1

*Terry Wilson*
**Terry Wilson**
**Executive Director**

# COMPLETION CERTIFICATE

*The Correspondence School of Emmaus International certifies that*

## YILIN LEE

*has successfully completed the course*

## Forgiving and Being Forgiven

**Date:** 07/15/19
**Grade:** 100%
**Units:** 1



*Terry Wilson*
**Terry Wilson**
**Executive Director**

EMMAUS
INTERNATIONAL

---

# COMPLETION CERTIFICATE

*The Correspondence School of Emmaus International certifies that*

## YILIN LEE

*has successfully completed the course*

## The Source of Life

**Date:** 09/10/19
**Grade:** 95%
**Units:** 1

*Terry Wilson*
**Terry Wilson**
**Executive Director**

EMMAUS
INTERNATIONAL

---

# COMPLETION CERTIFICATE

*The Correspondence School of Emmaus International certifies that*

## YILIN LEE

*has successfully completed the course*

## A Journey Through the Bible





CROSSROADS 

# CERTIFICATE OF ACHIEVEMENT

THIS CERTIFIES THAT

## Yilin Lee

HAS SUCCESSFULLY COMPLETED

### WHO ARE YOU?

Lisa Blystra
President & CEO, Crossroads

November 8, 2019

Date

SANTA ANA COLLEGE
SCHOOL OF CONTINUING EDUCATION
RANCHO SANTIAGO COMMUNITY COLLEGE DISTRICT

# Certificate of Participation

This is to certify that

*Yilin Lee*

Has completed __17__ classes

# Attitude for Success~CHOICES

*Patricia Cayle*
Instructor

December 11, 2019
Date

*Stephanie Passmore*
Associate Dean of Instruction
and Student Services

**SANTA ANA COLLEGE**
**SCHOOL OF CONTINUING EDUCATION**
**RANCHO SANTIAGO COMMUNITY COLLEGE DISTRICT**

# Certificate of Completion

RANCHO SANTIAGO COMMUNITY COLLEGE DISTRICT

This is to certify that



*Yilin Lee*

*Has successfully completed*

**Cognitive Awareness**

_Patricia Coyle_
Instructor

December 11, 2019
Date

SANTA ANA COLLEGE
SCHOOL OF CONTINUING EDUCATION
RANCHO SANTIAGO COMMUNITY COLLEGE DISTRICT

# Certificate of Participation

This is to certify that

*Yilin Lee*

Has completed _9_ classes

## Attitude for Success~CHOICES

_____
*Patricia Cayle*
Instructor

_____
October 7, 2019
Date

*Stephanie Pavamove*
Associate Dean of Instruction
and Student Services

SANTA ANA COLLEGE
SCHOOL OF CONTINUING EDUCATION
RANCHO SANTIAGO COMMUNITY COLLEGE DISTRICT

*Certificate of Completion*

This is to certify that

*Yilin Hsu Lee*

*Has Completed 12 Classes of*

*Attitudes for Success: Co- Occurring Disorders & Effective Parenting*

Luis Martinez, Instructor

*October 16, 2019*

Date

# CERTIFICATE OF COMPLETION

This certifies that on the 14th day of May 2019

Yilin Lee

Successfully completed the **Assert Yourself Treatment Program**

Dr. S. Efland
PTP Coordinator

L. Apodaca
Psych Intern

# CERTIFICATE OF COMPLETION

Presented to:

*Yilin Lee*

*"ENVIRONMENTAL ISSUES"*
*College Guild Courses*

Date:   May 15, 2019
Metropolitan Detention Center
Federal Bureau of Prisons



B. Burch
Correctional Counselor

BP-A0324
JUN 10

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

## WORK PERFORMANCE RATING - INMATE

| Inmate's Name<br>LEE, Yilin | Register No.<br>76161-112 | Unit<br>9 North |
|---|---|---|
| Evaluation Period<br>September 2018 | Work Assignment<br>Unit Orderly Ranges | |

Bonus Justification

Signature and Date of Dept. Head Approval

Route to Dept. Head for Review, Then to Unit Team

Instructions: Check the best statement in each area.  Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
_✓_5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
_✓_5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things.  Doesn't wait to be told what to do.
_✓_5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
_✓_5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
_✓_5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
___4. Needs little supervision. Good record of dependability an promptness.
_✓_5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

Prescribed by P5251

Replaces BP-S324, OCT 94

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
____1. Poor. Resentful and hostile. May argue with supervisor.
____2. Fair. Resists or ignores suggestions.
____3. Satisfactory. Generally does what is told without any fuss.
____4. Good. No hostility or resentment. Tries to improve.
__✓_5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
____1. Poor. Negativistic, hostile, annoying to others.
____2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
____3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
____4. Good. Friendly, congenial, helpful; others like to work with.
__✓_5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

____1. Fire or lay off that individual?
____2. Transfer the person to a less demanding job at a lower pay scale?
__✓_3. Continue to employ the person but without a raise or promotion this time?
____4. Raise the person's pay but keep the person at the same job?
____5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
1. Performance Pay - Grade Class (Check one) ____ 1 ____ 2 ____ 3 __✓_ 4 ____ M.

2. Hours of Satisfactory work **160** _____

3. Regular Pay **19.20** _____

4. Bonus Recommended: ____ yes; __✓_ no

5. Total Pay **19.20** _____

| Supervisor's Signature | Date 10/02/2018 |
|---|---|
| Inmate's Signature | Date |

Inmate _____ was requested to sign this rating, but refused, citing the following
reason:

| Staff Witness' Signature | Date |
|---|---|

**FILE IN SECTION 4 UNLESS APPROPRIATE FOR PRIVACY FOLDER**    **SECTION 4**

Prescribed by P5251

Replaces BP-S324, OCT 94

BP-A0324
JUN 10

**WORK PERFORMANCE RATING - INMATE**

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| Inmate's Name<br>LEE, Yilin | Register No.<br>76161-112 | Unit<br>9 North |
|---|---|---|
| Evaluation Period<br>November 2018 | Work Assignment<br>Unit Orderly | |

Bonus Justification

*Hardworker and dependable!*

Signature and Date of Dept. Head Approval

---

Route to Dept. Head for Review, Then to Unit Team

---

Instructions: Check the best statement in each area.  Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
_√_5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
_√_5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things.  Doesn't wait to be told what to do.
_√_5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
_√_5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
_√_5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
___4. Needs little supervision. Good record of dependability an promptness.
_√_5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

Prescribed by P5251

Replaces BP-S324, OCT 94

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
___1. Poor. Resentful and hostile. May argue with supervisor.
___2. Fair. Resists or ignores suggestions.
___3. Satisfactory. Generally does what is told without any fuss.
___4. Good. No hostility or resentment. Tries to improve.
_✓_5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
___1. Poor. Negativistic, hostile, annoying to others.
___2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
___3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
___4. Good. Friendly, congenial, helpful; others like to work with.
_✓_5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
   Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

___1. Fire or lay off that individual?
___2. Transfer the person to a less demanding job at a lower pay scale?
_✓_3. Continue to employ the person but without a raise or promotion this time?
___4. Raise the person's pay but keep the person at the same job?
___5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
   1. Performance Pay - Grade Class (Check one) ___ 1 ___ 2 ___ 3 _✓_ 4 ___ M.

   2. Hours of Satisfactory work **160** _____

   3. Regular Pay **19.20** _____

   4. Bonus Recommended: ___ yes; _✓_ no

   5. Total Pay **19.20** _____

| Supervisor's Signature | Date 11/05/2018 |
|---|---|
| Inmate's Signature | Date |

Inmate _____ was requested to sign this rating, but refused, citing the following
reason:

| Staff Witness' Signature | Date |
|---|---|

BP-A0324
JUN 10
**WORK PERFORMANCE RATING - INMATE**

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| Inmate's Name<br>LEE, Yilin | Register No.<br>76161-112 | Unit<br>9 North |
|---|---|---|
| Evaluation Period<br>DECEMBER 2018 | Work Assignment<br>Unit Orderly RANGES | |

Bonus Justification

*volunteers for additional duties on unit.*

Signature and Date of Dept. Head Approval

---

Route to Dept. Head for Review, Then to Unit Team

---

Instructions: Check the best statement in each area.  Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
_✓_5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
_✓_5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things.  Doesn't wait to be told what to do.
_✓_5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
_✓_5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
_✓_5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
___4. Needs little supervision. Good record of dependability an promptness.
_✓_5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

Prescribed by P5251

Replaces BP-S324, OCT 94

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
___1. Poor. Resentful and hostile. May argue with supervisor.
___2. Fair. Resists or ignores suggestions.
___3. Satisfactory. Generally does what is told without any fuss.
___4. Good. No hostility or resentment. Tries to improve.
_✓_5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
___1. Poor. Negativistic, hostile, annoying to others.
___2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
___3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
___4. Good. Friendly, congenial, helpful; others like to work with.
_✓_5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
   Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

___1. Fire or lay off that individual?
___2. Transfer the person to a less demanding job at a lower pay scale?
_✓_3. Continue to employ the person but without a raise or promotion this time?
___4. Raise the person's pay but keep the person at the same job?
___5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
   1. Performance Pay - Grade Class (Check one) ___ 1  ___ 2  ___ 3  _✓_ 4  ___ M.

   2. Hours of Satisfactory work **160**

   3. Regular Pay **19.20**

   4. Bonus Recommended: ___ yes; _✓_ no

   5. Total Pay **19.20**

| Supervisor's Signature | Date 01/03/2019 |
|---|---|
| Inmate's Signature | Date |

Inmate _____ was requested to sign this rating, but refused, citing the following
reason:

| Staff Witness' Signature | Date |
|---|---|

FILE IN SECTION 4 UNLESS APPROPRIATE FOR PRIVACY FOLDER          **SECTION 4**

BP-A0324
JUN 10

**WORK PERFORMANCE RATING - INMATE**

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| Inmate's Name<br>LEE, Yilin | Register No.<br>76161-112 | Unit<br>9 North |
|---|---|---|
| Evaluation Period<br>JAN 2019 | Work Assignment<br>Unit Orderly RANGES | |

Bonus Justification

Signature and Date of Dept. Head Approval

Route to Dept. Head for Review, Then to Unit Team

Instructions: Check the best statement in each area.  Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
____1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
____2. Fair. Careless; makes mistakes and does not check work. Should do better work.
____3. Satisfactory. Makes some mistakes but no more than expected at this level.
____4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
__✓__5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
____1. Unsatisfactory. Lazy, wastes time, goofs off.
____2. Fair. Does just enough to get by. Has to be prodded occasionally.
____3. Satisfactory. Works steadily but does not push self.
____4. Good. Willing Worker. Does a full day's work and wastes little time.
__✓__5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
____1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
____2. Fair. Usually relies on others to say what needs to be done.
____3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
____4. Good. Can plan own work well. Acts on own in most things.  Doesn't wait to be told what to do.
__✓__5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
____1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
____2. Fair. Shows minimal interest but not very eager to learn.
____3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
____4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
__✓__5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
____1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
____2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
____3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
____4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
__✓__5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
____1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
____2. Needs closer supervision than most. Not very dependable.
____3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
____4. Needs little supervision. Good record of dependability an promptness.
__✓__5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

Prescribed by P5251

Replaces BP-S324, OCT 94

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
___1. Poor. Resentful and hostile. May argue with supervisor.
___2. Fair. Resists or ignores suggestions.
___3. Satisfactory. Generally does what is told without any fuss.
___4. Good. No hostility or resentment. Tries to improve.
_✓_5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
___1. Poor. Negativistic, hostile, annoying to others.
___2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
___3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
___4. Good. Friendly, congenial, helpful; others like to work with.
_✓_5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
   Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

___1. Fire or lay off that individual?
___2. Transfer the person to a less demanding job at a lower pay scale?
_✓_3. Continue to employ the person but without a raise or promotion this time?
___4. Raise the person's pay but keep the person at the same job?
___5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
   1. Performance Pay – Grade Class (Check one) ___ 1 ___ 2 ___ 3 _✓_ 4 ___ M.

   2. Hours of Satisfactory work _140_

   3. Regular Pay _16.80_

   4. Bonus Recommended: ___ yes; _✓_ no

   5. Total Pay _16.80_

| Supervisor's Signature | Date 02/05/2019 |
|---|---|
| Inmate's Signature | Date |

Inmate _____ was requested to sign this rating, but refused, citing the following
reason:

| Staff Witness' Signature | Date |
|---|---|

**FILE IN SECTION 4 UNLESS APPROPRIATE FOR PRIVACY FOLDER**          **SECTION 4**

BP-A0324
JUN 10
WORK PERFORMANCE RATING - INMATE

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| Inmate's Name<br>LEE, Yilin | Register No.<br>76161-112 | Unit<br>9 North |
|---|---|---|
| Evaluation Period<br>FEBRUARY 2019 | Work Assignment<br>Unit Orderly RANGES | |

Bonus Justification

*Good of Job !*

Signature and Date of Dept. Head Approval

Route to Dept. Head for Review, Then to Unit Team

Instructions: Check the best statement in each area.  Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training.
_✓_5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
_✓_5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things.  Doesn't wait to be told what to do.
_✓_5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
_✓_5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
_✓_5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
___4. Needs little supervision. Good record of dependability an promptness.
_✓_5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
___1. Poor. Resentful and hostile. May argue with supervisor.
___2. Fair. Resists or ignores suggestions.
___3. Satisfactory. Generally does what is told without any fuss.
___4. Good. No hostility or resentment. Tries to improve.
_✓_5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
___1. Poor. Negativistic, hostile, annoying to others.
___2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
___3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
___4. Good. Friendly, congenial, helpful; others like to work with.
_✓_5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

___1. Fire or lay off that individual?
___2. Transfer the person to a less demanding job at a lower pay scale?
_✓_3. Continue to employ the person but without a raise or promotion this time?
___4. Raise the person's pay but keep the person at the same job?
___5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
   1. Performance Pay - Grade Class (Check one) ___ 1 ___ 2 ___ 3 _✓_ 4 ___ M.

   2. Hours of Satisfactory work **140** _____.

   3. Regular Pay **16.80** _____.

   4. Bonus Recommended: ___ yes; _✓_ no

   5. Total Pay **16.80** _____.

| Supervisor's Signature | Date 03/01/2019 |
|---|---|
| Inmate's Signature | Date |

Inmate _____ was requested to sign this rating, but refused, citing the following
reason: 

| Staff Witness' Signature | Date |
|---|---|

FILE IN SECTION 4 UNLESS APPROPRIATE FOR PRIVACY FOLDER

**SECTION 4**

BP-A0324
JUN 10
## WORK PERFORMANCE RATING – INMATE

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| Inmate's Name<br>LEE, Yilin | Register No.<br>76161-112 | Unit<br>9 North |
|---|---|---|
| Evaluation Period<br>MARCH 2019 | Work Assignment<br>Unit Orderly | |

Bonus Justification

Signature and Date of Dept. Head Approval

Route to Dept. Head for Review, Then to Unit Team

Instructions: Check the best statement in each area.  Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
_√_5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
_√_5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things.  Doesn't wait to be told what to do.
_√_5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
_√_5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
_√_5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
___4. Needs little supervision. Good record of dependability an promptness.
_√_5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

**C. RESPONSE TO SUPERVISION AND INSTRUCTION**
____1. Poor. Resentful and hostile. May argue with supervisor.
____2. Fair. Resists or ignores suggestions.
____3. Satisfactory. Generally does what is told without any fuss.
____4. Good. No hostility or resentment. Tries to improve.
__✓_5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
____1. Poor. Negativistic, hostile, annoying to others.
____2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
____3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
____4. Good. Friendly, congenial, helpful; others like to work with.
__✓_5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
    Based on this inmate's overall performance during this work period, if this inmate was an employee of yours
    in the community would you:

____1. Fire or lay off that individual?
____2. Transfer the person to a less demanding job at a lower pay scale?
__✓_3. Continue to employ the person but without a raise or promotion this time?
____4. Raise the person's pay but keep the person at the same job?
____5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
    1. Performance Pay - Grade Class (Check one) ___ 1  ___ 2  ___ 3  _✓_ 4  ___ M.

    2. Hours of Satisfactory work  140

    3. Regular Pay  16.80

    4. Bonus Recommended: ___ yes; _✓_ no

    5. Total Pay  16.80

| Supervisor's Signature | Date 04/05/2019 |
|---|---|
| Inmate's Signature | Date |

Inmate _____ was requested to sign this rating, but refused, citing the following
reason:

| Staff Witness' Signature | Date |
|---|---|

FILE IN SECTION 4 UNLESS APPROPRIATE FOR PRIVACY FOLDER            **SECTION 4**

BP-A0324
JUN 10

## WORK PERFORMANCE RATING - INMATE

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| Inmate's Name LEE, Yilin | Register No. 76161-112 | Unit 9 North |
|---|---|---|
| Evaluation Period APRIL 2019 | Work Assignment Unit Orderly | |

Bonus Justification

Signature and Date of Dept. Head Approval

Route to Dept. Head for Review, Then to Unit Team

Instructions: Check the best statement in each area.  Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
_✓_5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
_✓_5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things.  Doesn't wait to be told what to do.
_✓_5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
_✓_5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
_✓_5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
___4. Needs little supervision. Good record of dependability an promptness.
_✓_5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
____1. Poor. Resentful and hostile. May argue with supervisor.
____2. Fair. Resists or ignores suggestions.
____3. Satisfactory. Generally does what is told without any fuss.
____4. Good. No hostility or resentment. Tries to improve.
__✓__5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
____1. Poor. Negativistic, hostile, annoying to others.
____2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
____3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
____4. Good. Friendly, congenial, helpful; others like to work with.
__✓__5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
    Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

____1. Fire or lay off that individual?
____2. Transfer the person to a less demanding job at a lower pay scale?
__✓__3. Continue to employ the person but without a raise or promotion this time?
____4. Raise the person's pay but keep the person at the same job?
____5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
    1. Performance Pay - Grade Class (Check one) ____1 ____2 ____3 __✓__4 ____M.

    2. Hours of Satisfactory work 140 _____

    3. Regular Pay 16.80 _____

    4. Bonus Recommended: ____ yes; __✓__ no

    5. Total Pay 16.80 _____

| Supervisor's Signature | Date 05/05/2019 |
|---|---|
| Inmate's Signature | Date |

Inmate _____ was requested to sign this rating, but refused, citing the following reason:

| Staff Witness' Signature | Date |
|---|---|

FILE IN SECTION 4 UNLESS APPROPRIATE FOR PRIVACY FOLDER        **SECTION 4**

BP-A0324
JUN 10

WORK PERFORMANCE RATING - INMATE

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| Inmate's Name<br>LEE, Yilin | Register No.<br>76161-112 | Unit<br>9 North |
|---|---|---|
| Evaluation Period<br>MAY 2019 | Work Assignment<br>Unit Orderly | |

Bonus Justification *Has done a excellent job preparing unit for ACA accredidation.*

Signature and Date of Dept. Head Approval

---

Route to Dept. Head for Review, Then to Unit Team

---

Instructions: Check the best statement in each area.  Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
✓5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
✓5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things.  Doesn't wait to be told what to do.
✓5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
✓5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
✓5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
___4. Needs little supervision. Good record of dependability an promptness.
✓5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
___1. Poor. Resentful and hostile. May argue with supervisor.
___2. Fair. Resists or ignores suggestions.
___3. Satisfactory. Generally does what is told without any fuss.
___4. Good. No hostility or resentment. Tries to improve.
_✓_5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
___1. Poor. Negativistic, hostile, annoying to others.
___2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
___3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
___4. Good. Friendly, congenial, helpful; others like to work with.
_✓_5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
   Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

___1. Fire or lay off that individual?
___2. Transfer the person to a less demanding job at a lower pay scale?
_✓_3. Continue to employ the person but without a raise or promotion this time?
___4. Raise the person's pay but keep the person at the same job?
___5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
   1. Performance Pay - Grade Class (Check one) ___ 1 ___ 2 ___ 3 _✓_ 4 ___ M.

   2. Hours of Satisfactory work _140_

   3. Regular Pay _16.80_

   4. Bonus Recommended: ___ yes; _✓_ no

   5. Total Pay _16.80_

| Supervisor's Signature | Date 06/03/2019 |
|---|---|
| Inmate's Signature | Date |

Inmate _____ was requested to sign this rating, but refused, citing the following reason:

| Staff Witness' Signature | Date |
|---|---|

FILE IN SECTION 4 UNLESS APPROPRIATE FOR PRIVACY FOLDER          **SECTION 4**

BP-A0324
JUN 10

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

## WORK PERFORMANCE RATING - INMATE

| Inmate's Name<br>LEE, Yilin | Register No.<br>76161-112 | Unit<br>9 North |
|---|---|---|
| Evaluation Period<br>JUNE 2019 | Work Assignment<br>Unit Orderly Ranges | |

Bonus Justification




Signature and Date of Dept. Head Approval


Route to Dept. Head for Review, Then to Unit Team


Instructions: Check the best statement in each area.  Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

**A. QUALITY OF WORK**
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
_✓_5. Outstanding. Does superior work

**B. QUANTITY OF WORK**
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
_✓_5. Outstanding. Drives self exceptionally hard all the time.

**C. INITIATIVE**
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things.  Doesn't wait to be told what to do.
_✓_5. Outstanding. Has good ideas on better ways of doing things.

**D. INTEREST; EAGERNESS TO LEARN**
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
_✓_5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

**E. ABILITY TO LEARN**
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn, no matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates.  Requires average amount of instruction.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
_✓_5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

**F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT**
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
___4. Needs little supervision. Good record of dependability an promptness.
_✓_5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

Prescribed by P5251

Replaces BP-S324, OCT 94

**G. RESPONSE TO SUPERVISION AND INSTRUCTION**
_____1. Poor. Resentful and hostile. May argue with supervisor.
_____2. Fair. Resists or ignores suggestions.
_____3. Satisfactory. Generally does what is told without any fuss.
_____4. Good. No hostility or resentment. Tries to improve.
__✓__5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

**H. ABILITY TO WORK WITH OTHERS**
_____1. Poor. Negativistic, hostile, annoying to others.
_____2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
_____3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
_____4. Good. Friendly, congenial, helpful; others like to work with.
__✓__5. Outstanding. Gets along well with everyone. Very popular.

**I. OVERALL JOB PROFICIENCY**
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

_____1. Fire or lay off that individual?
_____2. Transfer the person to a less demanding job at a lower pay scale?
__✓__3. Continue to employ the person but without a raise or promotion this time?
_____4. Raise the person's pay but keep the person at the same job?
_____5. Promote the person to a more demanding job at a higher pay rate?

**J. GRADES AND PAY**
1. Performance Pay - Grade Class (Check one) _____ 1 _____ 2 _____ 3 __✓__ 4 _____ M.

2. Hours of Satisfactory work **140** _____

3. Regular Pay **16.80** _____

4. Bonus Recommended: _____ yes; __✓__ no

5. Total Pay **16.80** _____

| Supervisor's Signature | Date 07/02/2019 |
|---|---|
| Inmate's Signature | Date |

Inmate _____ was requested to sign this rating, but refused, citing the following
reason:

| Staff Witness' Signature | Date |
|---|---|